**Michael P. CAMPION, on behalf of themselves and all others similarly situated; Plaintiffs,**

v.

**CREDIT BUREAU SERVICES, INC. (a Washington corp.), Darlene M. Bright and John Doe Bright (Wife and Husband), and Thomas J. Miller and Jane Doe Miller (Husband and Wife); Defendants.**

No. CS–99–0199–EFS.

United States District Court, E.D. Washington.

March 16, 2001.

**668**

O Randolph Bragg, Horwitz Horwitz & Associates, Chicago, IL, Michael David Kinkley, Law Office of Michael D Kinkley, Spokane, WA, for plaintiffs.

Jed William Morris, Lukins & Annis, Spokane, WA, Terrence J Cullen, Forsberg & Umlauf PS, Seattle, WA, for defendants.

**ORDER DENYING MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AND MOTION FOR CLASS CERTIFICATION**

SHEA, District Judge.

On November 3, 2000, the Court telephonically heard argument on Defendant Thomas J. Miller's Motion to Dismiss Based Upon Lack of Standing, (Ct.Rec.113), Plaintiff's Motion to Extend Time for Filing Part of Plaintiff's Reply to Defendants' Materials In opposition to Class Certification, (Ct.Rec. 132), Plaintiffs' Motion for Leave to File Over–Length Brief Re Reply to Class Certification, (Ct.Rec.135), Plaintiff's Motion to Strike Affidavit of Paul A. Billberg, (Ct.Rec. 130), Plaintiff's Motion for Class Certification, (Ct.Rec.64), and Plaintiff's Revised Motion for Class Certification, (Ct.Rec.105). Plaintiffs were represented by Michael D.

Kinkley and O. Randolph Bragg. Defendants Credit Bureau Services, Inc. and Darlene M. Bright ("the Credit Bureau Defendants") were represented by Jed W. Morris. Defendant Thomas J. Miller was represented by Terrence J. Cullen. This Order memorializes and supplements the oral rulings of the Court.

## I. BACKGROUND

This case was filed on July 13, 1999, to contest the procedures Defendants used to collect the debts of Mr. Campion and others who are similarly situated. (Class–Action Compl. Under Fair Debt Collection Practices Act; Wash. State Consumer Protection Act, Ct. Rec. 1.) The complaint, a class action claim, alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the State of Washington Collection Agency Act ("WCAA"), Wash. Rev.Code § 19.16.100; and the State of Washington Consumer Protection Act ("WCPA"), Wash. Rev.Code § 19.86.010 *et seq.*

The facts of this case are set forth in the Court's Order Granting in Part and Denying in Part Plaintiffs' Motions to Strike and the Parties' Cross Motions for Summary Judgment, and Denying Plaintiffs' Motion to Amend, (Ct.Rec.104), filed September 20, 2000. For purposes of brevity, they are not repeated here.

## II. DEFENDANT MILLER'S MOTION TO DISMISS

Defendant Thomas J. Miller moves to dismiss Mr. Campion's claim against him on the ground that Mr. Campion lacks standing to sue him. (Ct.Rec.113). On June 14, 1999, Mr. Campion filed for bankruptcy under Chapter 13. Neither the Schedule of Assets and Liabilities nor the Chapter 13 Plan of Reorganization that Mr. Campion filed on that day list any claim or cause of action against Defendant Miller. The Schedule does list that Mr. Campion is a named Plaintiff in an FDCPA lawsuit against CBS of Spokane and values the claim at $2,500.00. (Decl. Terrence J. Cullen Supp. Def. Miller's Mot. Dismiss Based Lack Standing, Ct. Rec. 116, Voluntary Pet., Ex. 1, at 6.) On Septem-

ber 24, 1999, the bankruptcy court entered an order confirming Mr. Campion's Chapter 13 Plan. Defendant Miller asserts that because Mr. Campion does not list a cause of action against him in the Schedule or Plan, any cause of action Mr. Campion had against Defendant Miller passed to the bankruptcy trustee. Hence, on July 13, 1999, the date Mr. Campion filed the instant suit, Plaintiff had no cause of action against Defendant Miller and therefore lacks standing to sue Defendant Miller.

■ Chapters 1, 3, 5 and 13 of Title 11, the Bankruptcy Code, apply to Chapter 13 bankruptcy petitions. *See* 11 U.S.C. § 103(a), (h). The filing of a Chapter 13 bankruptcy petition creates an estate comprising the property identified in 11 U.S.C. §§ 541 and 1306(a). Such property generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1993). Legal or equitable interests in property include legal claims that could be brought for the benefit of the estate. *See Cable v. Ivy Tech State College*, 200 F.3d 467, 472–73 (7th Cir.1999). Except as provided in a confirmed plan or order confirming a plan, the debtor remains in possession of all property of the estate. *See* 11 U.S.C. §§ 1306(b), 1327(b).

Although the trustee in a bankruptcy case has the capacity to sue and be sued, *see* 11 U.S.C. § 323(b), "[a] debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal," *see* Fed. R. Bankr.P. 6009 (West 1984). While the phrase "debtor in possession" is defined in Chapter 11 of the Bankruptcy Code, *see* 11 U.S.C. § 1101(1), and used in several places in Chapter 12, *see* 11 U.S.C. §§ 1202, 1203, 1204, case law analogizes Chapter 13 debtors to Chapter 11 debtors and applies the "debtor in possession" phrase used in Rule 6009 to Chapter 13 debtors. *See Cable*, 200 F.3d at 472–73 (noting that Chapter 13 debtors have been analogized to Chapter 11 debtors, that courts have held that federal courts may hear claims brought by a Chapter 13 debtor-

in-possession, and that "[i]t would frustrate the essential purpose of § 1306 to grant the debtor possession of the chose in action yet prohibit him from pursuing it for the benefit of the estate").

Neither the Order Confirming Chapter 13 Plan nor the confirmed Chapter 13 Plan, withdraws Mr. Campion's possession of any of the property of his bankruptcy estate. (Ct. Rec. 116 Ex. 2.) The plan provides that the property of the estate shall revest in Mr. Campion upon dismissal or discharge only. (Ct. Rec. 116 Ex. 2 at 9.) The Court construes this to mean only that upon dismissal or discharge, any remaining estate property once again becomes Mr. Campion's personal property. Accordingly, Mr. Campion remains in possession of all legal claims that could be brought for the benefit of his bankruptcy estate, whether or not they are embraced by the FDCPA claim listed in Mr. Campion's June 14, 1999, Schedule of Assets and Liabilities. Nonetheless, the FDCPA claim against Mr. Miller falls within the FDCPA claim listed on the schedule. Mr. Campion knew at the time he filed his bankruptcy petition that he had an FDCPA claim. That he did not list all of the defendants to the claim, possibly because he did not know them, does not prevent those defendants from being part of the listed FDCPA claim. Further, Mr. Campion has filed an amended Schedule of Assets which lists Mr. Campion as a named Plaintiff in an FDCPA lawsuit against CBS of Spokane *and others*. (Decl. Michael D. Kinkley Re: Am. Schedule B Michael P. Campion, Ct. Rec. 138, Am. Schedule B Decl. Thereon, Attach. 1, at 3.) Finally, the FDCPA claim, though brought on behalf of Mr. Campion and others similarly situated, benefits his bankruptcy estate. If Mr. Campion prevails, his estate will be enlarged by his damage award. Accordingly, Mr. Campion has standing to sue Mr. Miller. Mr. Miller's motion to dismiss is DENIED.

### III. PLAINTIFF'S MOTION TO EXTEND TIME FOR FILING REPLY

Plaintiffs move to extend the time for filing part of their reply to Defendants' responses to Plaintiffs' class certification motion. (Ct.

Rec.132.) The Credit Bureau Defendants and Defendant Miller both filed responsive memoranda on October 10, 2000. (Ct. Recs.112, 117.) Plaintiffs filed their reply, (Pls.' Reply Re Revised Mot. Class Certification, Ct. Rec. 125), on October 18, 2000, and a statement of facts, (Ct.Rec.126), and a declaration, (Ct.Rec.127), on October 19, 2000. Pursuant to Local Rule 7.1(d), Plaintiffs' reply materials should have been filed no later than October 17, 2000. Plaintiffs' motion to extend time is GRANTED. *See* Fed. R.Civ.P. 6(b)(2).

## IV. PLAINTIFFS' MOTION FOR LEAVE TO FILE OVER–LENGTH REPLY BRIEF

■ Plaintiffs request leave to file an over-length brief replying to their class certification motion. (Ct.Rec.135.) Plaintiffs' reply brief is eight pages longer than the ten page limit set in Local Rule 7.1(f). The additional pages are needed because of the complex nature of the issues involved in the motion. They are also needed to address the issues raised the over-length response memoranda filed by the Credit Bureau Defendants and Defendant Miller. (Ct.Recs.112, 117.) Pursuant to Local Rule 7.1(f), the Court finds good cause shown for waiver of the ten page limit and GRANTS Plaintiffs motion.

## V. PLAINTIFF'S MOTION TO STRIKE

On October 27, 2000, Plaintiffs filed a motion to strike the Affidavit of Paul A. Billberg, (Ct.Rec.119), a document filed on October 10, 2000. (Ct.Rec.130.) Plaintiffs base their motion on the allegations that (1) the affidavit lacks foundation because Mr. Billberg fails to provide credentials qualifying him to offer the expert opinion contained in the affidavit on the valuation of Defendant CBS's collection division, (2) the affidavit's information regarding the net worth of Defendant CBS's collection division is not relevant to determining the class certification issue, (3) determination of net worth is inappropriate because Defendants have refused to offer discovery of that information until

after the issue of class certification has been decided, and (4) the affidavit provides no basis in fact for the opinion offered therein.

The CBS Defendants respond that (1) Mr. Billberg is a lay witness who may give opinion testimony so long as it is rationally based on his perception and helpful to the determination of a fact in issue, (2) the net worth of Defendant CBS is a proper factor in considering a motion for class certification, and (3) Mr. Campion has offered no support for his contention that he has been prohibited or precluded from conducting discovery on the issue of net worth.

■ The Court notes that in his affidavit, Mr. Billberg states that he is the Accounting Manager at Defendant CBS and that as part of his responsibilities he periodically prepares balance sheets for Defendant CBS in accordance with generally accepted accounting principles. One net worth figure he provides in the affidavit is taken from such a balance sheet he prepared for the period ending July 31, 2000. The Court finds that Mr. Billberg has adequate credentials and basis in fact to provide that net worth figure. Therefore, Plaintiffs' motion with respect to that figure, made on the basis of Mr. Billberg's credentials and basis in fact, is DENIED. However, the affidavit provides no background or experience regarding the net worth figure set forth on the American Collectors Association form for valuation of a collection agency. Accordingly, Plaintiffs' motion with respect to that figure is GRANTED.

■ The Court finds that net worth figures generally, and Mr. Billberg's net worth figure of $181,389.10 from the July 31, 2000, period in particular, are relevant to class certification. Under the FDCPA, prevailing non-named plaintiffs share an award capped at "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C.A. § 1692k(a)(2)(B) (West 1998). If Mr. Billberg's figure is taken as the net worth of Defendant CBS,[1] any successful

---

1. The Court recognizes Plaintiffs' assertion that Mr. Billberg's figure is improper because it sets forth the net worth of Defendant CBS's collec-

tion department, rather than the net worth of Defendant CBS as a whole. Nonetheless, the

non-named class action plaintiffs would share $1,813.89 at most. Defendants estimate there are 250 individuals in the Affidavit Class, alone, (Ct. Rec. 125 at 6 lines 17–19), yielding about $7.25 per unnamed plaintiff. Under Fed.R.Civ.P. 23(b), a class may be certified only if one of three grounds exists. The main ground asserted by Plaintiffs is that "questions of law or fact common to the members of the class predominate over any questions of affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). One of the factors to be considered in determining whether this ground exists is the class members' interests in individually controlling the prosecution of separation actions. *See* Fed.R.Civ.P. 23(b)(3)(A). The Supreme Court has noted that interest in separate lawsuits depends in part on whether the amounts at stake for potential class members are so small that separate suits would be impracticable. *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 616–17, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Net worth information is essential in comparing the amounts non-named plaintiffs may recover in an FDCPA class action with amounts recoverable in individual suits. Accordingly, Mr. Billberg's net worth figure of $181,389.10 from the July 31, 2000, period is relevant to the class certification issue.

Plaintiffs allege that because Defendants avoided discovery on the net worth issue by claiming privacy interests, Plaintiffs were therefore barred from conducting discovery on Defendant CBS's net worth. Defendants denied the allegations. Because Plaintiffs have not proved the allegations, and because the Court finds the net worth information to be useful, but not determinative, (see below), the Court declines to strike the July 31, 2000, net worth figure. Accordingly, Plaintiffs' motion with respect to the net worth figure from the July 31, 2000, period is DENIED.

## VI. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Before the Court are Plaintiff's Motion for Class Certification, (Ct.Rec.64), filed May 8,

2000, and Plaintiff's Revised Motion for Class Certification, (Ct.Rec.105), filed September 27, 2000. Because the revised motion contains more detailed information regarding the classes Plaintiffs seek to certify than does the original motion, the Court deems the original motion to have been superseded by the revised motion. Plaintiff's Motion for Class Certification, (Ct.Rec.64), is therefore DENIED as moot.

In their revised motion for class certification, Plaintiffs essentially request certification of the following two classes:

(1) *The Affidavit Class,* consisting of (i) all persons with addresses in the State of Washington (ii) to whom Defendants sent one or more Affidavit(s) for Writ of Garnishment which are the same or similar to either the affidavit in support of Writ of Garnishment A or the affidavit in support of Writ of Garnishment B(iii) regarding obligations incurred for personal, family, or household purposes (iv) which Affidavit(s) were not returned as undelivered by the Post Office (v) for the period prior to July 13, 1999, the date this action was filed, corresponding to the statute of limitations of the violated statute (one year for the FDCPA; four years for the WCPA and WCAA); and

(2) *The Collection Without Judgment on Garnishment Answer Class ("Collection Class"),* consisting of (i) all persons (ii) from whom Defendants have (a) collected or attempted to collect attorney fees and/or costs claimed by Defendants as incurred for garnishment proceedings under the laws of the State of Washington, or (b) collected or attempted to collect money held by writ of garnishment (iii) without first obtaining a judgment on the garnishment Answer against the garnishee defendant that (a) awards those attorney fees and/or costs against the judgment debtor in favor of the judgment plaintiffs, or (b) awarding funds held by writ to the judgment plaintiffs (iv) in connection with attempts to collect debts incurred for personal, family, or household purposes (v) for the period prior to July 13, 1999, the date this action was filed, corresponding to the statute of limitations of the

---

figure is useful as a low end value for Defendant CBS's net worth.

violated statute (one year for the FDCPA; four years for the WCPA and WCAA).

## A. Inclusion of the Affidavit Class in the Complaint

■ Defendants assert that the Affidavit Class cannot be certified because it is beyond the scope and allegations of Plaintiffs' complaint. Plaintiffs essentially reply that the Affidavit Class is included in their complaint because they pled the claim that is the basis for the Affidavit Class.

■ To set forth a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). An action may be maintained as a class action if the prerequisites of and a ground for a class action are satisfied. *See* Fed.R.Civ.P. 23(b). Accordingly, the Court holds that a complaint's scope includes a class action claim if the complaint contains a short and plain statement of the claim forming the basis for the class action and pleads that the prerequisites of and a ground for a class action are satisfied with respect to that claim. *See, e.g., Ladd v. Dairyland County Mut. Ins. Co. of Tex.,* 96 F.R.D. 335, 338 (N.D.Tex.1982)(holding that certain claims could not be a class issue in part because the complaint did not mention the claims); *Wilson v. Zarhadnick,* 534 F.2d 55, 57 (5th Cir.1976) (holding that "[t]o maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity"). The prerequisites of a class action are commonly termed numerosity, commonality, typicality, and adequacy of representation. *See* Fed.R.Civ.P. 23(a). The grounds for a class action are risk of inconsistent or dispositive adjudications, appropriateness of injunctive or declaratory relief, and predominance of common questions of law or fact and superiority of the class action approach. *See* Fed.R.Civ.P. 23(b).

Defendants and Plaintiffs understand the crux of the claim underlying Plaintiffs' Affidavit Class to be the allegation that Defendants' affidavits in support of writs of garnishment misrepresented the "legal status" of unawarded attorney fees and costs by

describing them as "judgment" amounts. The sole class action alleged in Plaintiffs' Complaint, (Ct.Rec.1), is the Collection Class, (Ct. Rec. 1 ¶¶ 7.1–7.11). One of the questions of law and fact Plaintiffs identify as being common to the Collection Class is whether Defendants violated the FDCPA, WCPA, or WCAA by "[u]sing false representations or deceptive means to collect or attempt to collect a debt." (Ct. Rec. 1 ¶ 7.3 b.) False representation of the legal status of any debt is a false representation under the FDCPA. *See* 15 U.S.C. § 1692e(2)(A). As the Court found in its September 20, 2000, Order, (Ct.Rec.104), Defendants' description of unawarded attorney fees and costs as a "judgment" was a false representation of the legal status of the debt and violated § 1692e(2)(A). The Court also found that such a description violated the WCAA, Wash. Rev.Code § 19.16.250(14), and therefore was a per se violation of the WCPA, under Wash. Rev.Code §§ 19.86.020, 19.16.440. Accordingly, Plaintiffs did plead the claim that is the basis for their Affidavit Class.

Because Plaintiffs pled their Affidavit Class claim within their pleading of the Collection Class, all the assertions regarding prerequisites of and grounds for the Collection Class apply to the Affidavit Class claim. With respect to the Collection Class, Plaintiffs allege numerosity, (Ct. Rec. 1 ¶ 7.2), commonality, (Ct. Rec. 1 ¶ 7.3), typicality, (Ct. Rec. 1 ¶ 7.5), and adequacy of representation (Ct. Rec. 1 ¶ 7.6). Plaintiffs also allege predominance of common questions of law or fact, (Ct. Rec. 1 ¶ 7.3, 7.4), the superiority of the class action approach, (Ct. Rec. 1 ¶ 7.7), and the appropriateness of declaratory relief, (Ct. Rec. 1 ¶ 7.11). These allegations satisfy the prerequisite and grounds requirements for pleading a class action. Plaintiffs' Complaint therefore adequately pleads and includes the Affidavit Class.

## B. Satisfaction of Class Action Certification Requirements

■ The party moving for class certification has the burden of proving that the class satisfies the prerequisites and a class action ground set forth in Fed.R.Civ.P. 23(a) and (b). *See e.g., Hanon v. Dataproducts*

*Corp.*, 976 F.2d 497, 508 (9th Cir.1992). The Court must engage in a rigorous analysis to determine whether all the prerequisites of Rule 23(a) are satisfied. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, an extensive evidentiary showing is not required. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). All that is necessary is sufficient information for the court "to form a reasonable judgment on each requirement." *Id.* The court does not examine the merits of the case, *see id.*, and must accept as true the substantive allegations of the class claim, *see id.* at 901 n. 17.

### 1. Prerequisites of a Class Action

To be certified, a class action must satisfy the four prerequisites of typicality, commonality, numerosity, and adequacy of representation. *See* Fed.R.Civ.P. 23(a).

#### a. Typicality

■ The prerequisite of typicality requires the claims of the representative party to be typical of the claims of the class. *See* Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)).

■ In the context of the Affidavit Class, Mr. Campion's claim is that Defendants sent him affidavits in support of Writ A and Writ B that violated the FDCPA, WCPA and WCAA. By definition, the claim is typical of the claims of the Affidavit Class because that class is defined as persons to whom Defendants sent affidavits for writ of garnishment that are the same as or similar to one of the affidavits Defendants sent to Mr. Campion. As was discussed above, the parties understand that an affidavit that is "the same as or similar to one of the affidavits" sent to Mr. Campion is an affidavit that misrepresents the "legal status" of unawarded attorney fees and costs by describing them as "judgment" amounts.

■ In the context of the Collection Class, Mr. Campion's claim is that Defendants collected or attempted to collect fees and costs or money held by writ of garnishment without first obtaining a judgment on the garnishment answer that awarded those fees, costs and money to Defendants. This failure allegedly violates the FDCPA, WPCA and WCAA. Linguistically, Mr. Campion's claim is identical to the claims of the Collection Class. However, Mr. Campion's claim is not typical of those of the Collection Class because the Collection Class claims are based on and arise from a significantly broader course of conduct than the conduct from which Mr. Campion's claim arises.

The Collection Class's claims, by stemming from the Defendants' collection or attempt to collect fees, costs or money held by writ of garnishment without first obtaining a judgment on the garnishment answer, arise from a wide array of conduct. The conduct includes (1) garnishee-defendants' remittance of money in response to a pay order; (2) garnishee-defendants' remittance of money without being ordered by either a pay order or a judgment; (3) garnishee-defendants' remittance of money to the court: (4) garnishee-defendants' remittance of money directly to Defendant CBS; (5) Defendant CBS's retention of the remitted money and subsequently obtaining a judgment on the garnishment answer; and (6) Defendant CBS's retention of the remitted money without ever obtaining a judgment on the garnishment answer. In contrast, Mr. Campion's claim arises because Defendant CBS (1) kept the money Mr. Campion's employer, the garnishee-defendant, remitted directly to Defendant CBS without the court having issued a pay order or judgment and (2) never obtained a judgment on the money.

According to Defendant Darlene Bright the conduct giving rise to Mr. Campion's claim is rare. Only infrequently did a garnishee-defendant remit money directly to Defendant CBS without being ordered to do so by a pay order or a judgment. More commonly, money was remitted in response to a pay order and was remitted directly to the court, which then turned the money over to

Defendant CBS. However, as is discussed in the Court's September 20, 2000, Order, (Ct. Rec.104), the FDCPA bona fide error defense may apply to a claim arising from this more common conduct. If the defense applies, no claim exists under the FDCPA and there is no per se violation of the WCAA, Wash. Rev.Code § 19.16.250(14) or of the WCPA, Wash. Rev.Code § 19.86.020. Accordingly, for Collection Class claims arising from this more common conduct, the applicability of the bona fide error defense would need to be determined.

Also, Defendant Darlene Bright states that judgments have been obtained "after the fact" in some cases where money was remitted when no pay order or judgment required it. In Mr. Campion's case, Defendant CBS could not obtain a judgment on the funds it received pursuant to Writ A because Mr. Campion had filed for bankruptcy. Again, as is discussed in the Court's September 20, 2000, Order, (Ct.Rec.104), where "after the fact" judgments are obtained, FDCPA, WCPA and WCAA claims may be vitiated by the remedial effect of Engrossed Substitute Senate Bill 6295 ("ESSB 6295"), which modified Wash. Rev.Code § 6.27.250(1). Thus, in all Collection Class claims where Defendant CBS has obtained judgments after receiving funds, the effect of ESSB 6295 would need to be determined.

Because Mr. Campion's employer remitted funds directly to Defendant CBS without being directed to do so by a pay order or judgment, and because Defendant CBS could not subsequently enter a judgment on those funds due to Mr. Campion's bankruptcy, Mr. Campion's claim is based on conduct which is rare compared to the conduct from which the claims of Collection Class members arise. Plaintiffs provide no information indicating that any other Collection Class member has claims arising from the same situation as Mr. Campion's. Accordingly, the Court finds that Mr. Campion's claims are not typical of the claims of the Collection Class. Plaintiffs' motion for certification of the Collection Class is DENIED for failure to meet the typicality requirement.

### b. Commonality

The prerequisite of commonality requires the existence of at least one question of law or fact common to the class. See Fed.R.Civ.P. 23(a)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998). The legal question common to the Affidavit Class is whether, by including unawarded garnishment costs and fees in the amount identified as a "judgment" on the garnishment affidavits, Defendants used false representations or deceptive means to collect or attempt to collect a debt. The Court finds the commonality requirement is met with respect to the Affidavit Class.

### c. Numerosity

Numerosity requires that the class members be so numerous that joinder is impracticable. See Fed.R.Civ.P. 23(a)(1). "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir.1983).

For Plaintiffs to meet the numerosity requirement for the Affidavit Class, they must demonstrate that a sufficient number of persons exist to whom Defendants sent affidavits misrepresenting the "legal status" of unawarded attorney fees and costs as to make joinder impracticable. Defendant Darlene Bright, the only person who prepares garnishment papers and affidavits for Defendant CBS, prepared two to thirty or forty sets of garnishment papers per week from 1996 until about April 1999. (Decl. Michael D. Kinkley Re Copy Bright Dep., Ct. Rec. 127, Dep. Darlene M. Bright at 27–29, 50–51.) The garnishment affidavits were prepared using either a hand-typed or computer generated form that labeled the total amount being sought as a "judgment" amount and included in that amount unawarded attorney fees and costs. (Ct. Rec. 127, Dep. Darlene M. Bright at 27–28, 36–41, 48–52.) Plaintiffs note that Defendants admit that there are " 'an estimated 250 individuals in the Affidavit Class.' " (Ct. Rec. 125 at 6 lines 17–19, quoting Corrected Def. Credit Bureau Services' Resp. Opp'n Plfs.' Mot. Class Certifica-

tion, Ct. Rec. 110, at 20 lines 22–24.) The Court finds that the estimate, based on an average of about five affidavits per week, is reasonable, and that 250 individuals are sufficient to make joinder impracticable. Plaintiffs have met the numerosity requirement for the Affidavit Class.

### d. Adequacy of Representation

The prerequisite of adequacy of representation requires the named plaintiff to fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a)(4). That in turn consists of two requirements: (1) that the named plaintiff's counsel is qualified, experienced, and generally able to conduct the proposed litigation, and (2) that the named plaintiff has no interest antagonistic to those of the class. *See Securities & Exch. Comm'n v. Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992).

Mr. Campion's counsel includes O. Randolph Bragg, an attorney who has co-authored books and articles on the FDCPA, given a number of lectures on consumer law issues, and been involved in over forty consumer cases. (Decl. Rand Bragg Supp. Class Certification, Ct. Rec. 109). Mr. Campion is also represented by Michael D. Kinkley, an attorney who has filed and appeared in a number of FDCPA class action cases in the Eastern District of Washington.

Nothing forwarded by either party indicates that Mr. Campion has any interest antagonistic to that of the Affidavit Class. Mr. Campion and the Affidavit Class have identical claims and seek identical relief with respect to those claims. Nothing in the claims Mr. Campion brings individually conflicts with the interests of the Affidavit Class.

Accordingly, the Court finds Mr. Campion's counsel to be qualified, experienced, and generally able to conduct the proposed litigation; Mr. Campion's interests are not antagonistic to those of the Affidavit Class. Mr. Campion has met the adequacy of representation requirement.

### 2. Rule 23(b)(3) Ground for Class Action

A class action can be certified only if at least one of the grounds set forth in Fed.

R.Civ.P. 23(b) exists. *See Amchem Products,* 521 U.S. at 614, 117 S.Ct. 2231. The main ground asserted by Plaintiffs is that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). The matters to be considered in determining the existence of this ground include

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

### a. Common Questions of Law or Fact

Questions of law and fact that will arise in the course of litigating the FDCPA, WCAA and WCPA claims of the Affidavit Class include (1) whether the affidavits sent to the class members in support of writs of garnishment misrepresented the "legal status" of unawarded attorney fees and costs by describing them as "judgment" amounts, (2) whether the writs concerned obligations incurred for personal, family, or household purposes, (3) whether the affidavits were not returned as undelivered, and (4) whether the affidavits were sent within the statute of limitations period for the statute claimed to have been violated. Additionally, causation questions will arise in the context of the WCPA claim. The WCPA, unlike the FDCPA and WCAA, is not a strict liability statute. Rather, each class member will need to prove that "the defendant's act or practice (1) is unfair or deceptive, (2) occurs in the conduct of trade or commerce, (3) affects the public interest, and (4) causes (5) injury to the plaintiff in his or her business or property." *Eriks v. Denver,* 118

Wash.2d 451, 463, 824 P.2d 1207 (1992); *see also* Wash. Rev.Code § 19.86.090. Finally, questions regarding damages will arise.

Where an issue is of central importance to the case and common to all class member claims, it can cause class litigation to be appropriate. *See Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1231–32 (9th Cir.1996). An issue is central to the case if it is one the resolution of which may dispose of the entire litigation or resolve the issue for subsequent individual trials. *See id.* However, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted," a court may isolate the common issues under Rule 23(c)(4)(A) and address them in a class action. *Id.* at 1234.

The legal question that is of central importance to this case and common to all proposed class member claims is whether the affidavits misrepresented the legal status of unawarded attorney fees and costs by describing them as "judgment" amounts. The Court already decided this issue in its September 20, 2000, Order, (Ct. Rec. 104 at 16–22, 36–38, 38–39). There, the Court found that if attorney fees and costs have not been awarded and are included in the amount labeled as a "judgment" on Defendants' garnishment affidavit, Defendants have misrepresented the legal status of the fees and costs, thereby violating the FDCPA, WPCA and WCAA. Application of this finding to all FDCPA, WPCA and WCAA claims of potential class members resolves the issue both for this and for subsequent individual trials.

This common question is sufficient to carry questions that, though concerning facts regarding individual class members, can be answered ministerially. Specifically, a straightforward, ministerial review of Defendants' documents will determine whether (1) the affidavits sent to the class members in support of writs of garnishment described unawarded attorney fees and costs as "judgment" amounts, (2) the affidavits were sent within the statute of limitations period for the FDCPA, WCAA and WCPA, and (3) the affidavits were delivered to the debtor class members, since Defendants would have certified mail or personal service records for the affidavits, see Wash. Rev.Code § 6.27.130; *see also Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2d Cir.1992) (holding that harm under the FDCPA does not occur until receipt of the collection notice and that if the notice were lost in the mail, it is unlikely an FDCPA violation would have occurred). Accordingly, the Court finds these questions do not defeat Plaintiffs' class certification motion since their answers are comparatively easily obtained.

The common question is also sufficient to carry the determination of whether the writs involved concern obligations incurred for personal, family, or household purposes, and not business purposes. While this fact issue must be addressed with each class member, resolution of the matter involves application of a straightforward, legal standard: whether the end use of the corresponding loan is for consumer, rather than business purposes, *see Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1068 (9th Cir.1992). Such a determination can involve close questions, such as when a loan is used for investment purposes. *See id.* at 1069–70; *Thorns v. Sundance Properties,* 726 F.2d 1417, 1419 (9th Cir.1984) (applying the Truth in Lending Act). However, where a loan is used for a home mortgage, the answer is virtually ministerial.

The remaining two questions overwhelm the common and ministerial questions such that they must be considered in individual trials, rather than as part of a class action. First, the causation questions raised by the WCPA claim requires each class member to prove that "the defendant's act or practice caused injury to the plaintiff in his or her business or property." *See, e.g., Castano v. American Tobacco Co.,* 84 F.3d 734, 745 (5th Cir.1996) (holding that a fraud class action cannot be certified when individual reliance will be an issue). Second, questions regarding damages will require an individual factual analysis of each class member's circumstances, unless the class member only seeks statutory damages under the FDCPA, 15 U.S.C. § 1692k.

Accordingly, the Court holds that the following questions predominate and may be addressed in the proposed class action:

1. Whether the affidavits sent to the class members in support of writs of garnishment misrepresented the "legal status" of unawarded attorney fees and costs by describing them as "judgment" amounts;

2. Whether the writs involved concerned obligations incurred for personal, family, or household purposes, and not for business purposes;

3. Whether the affidavits were delivered to the debtor class members; and

4. Whether the affidavits were sent within the statute of limitations period for the FDCPA, WCAA and WCPA.

The following questions overwhelm the common and ministerial questions such that they must be considered in individual trials, rather than as part of the proposed class action:

1. Whether, under the WCPA, the defendant's act or practice caused injury to the plaintiff in his or her business or property; and

2. Questions regarding damages, unless the class members only seek statutory damages under the FDCPA, 15 U.S.C. § 1692k.

#### b. Superiority of Class Action

 To certify a class action under Fed.R.Civ.P. 23(b), the court must find that a class action is superior to other methods of adjudication. *See Valentino,* 97 F.3d at 1235. A class action may be superior if class litigation of common issues will reduce litigation costs and promote greater efficiency, or if no realistic alternative exists. *See id.* In evaluating superiority of proceeding with a class action, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods. Inc.,* 83 F.3d 610, 632 (3d Cir. 1996). "The greater the number of individual issues, the less likely superiority can be established." *Castano,* 84 F.3d at 745 n. 19. At this point, the Court also considers

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

For the questions that predominate, the Court finds that class action is superior to individual litigation of the Affidavit Class claims. First, the cumbersome nature of individual litigation and the comparatively minimal damages recoverable under the FDCPA[2] make it likely that class members will have little interest in bringing their own action. Accordingly, participation of a class action would be a viable option, even though the class members might receive only $7.25 from it. Further, litigation costs are reduced by having a single attorney or group of attorneys represent the class and by undergoing a single discovery period discovery against the same defendant. Second, the Court is aware of no suits involving these matters that have been brought by or against potential Affidavit Class members. Third, hosting a class action in this forum is appropriate. It would avoid relitigation of issues already resolved in the Court's September 20, 2000, Order, (Ct.Rec.104); additionally, the Affidavit Class comprises persons with addresses in the State of Washington. Finally, the likely difficulties in managing a class action consist of determining the class member's identities and resolving the ministerial questions. Such difficulties are likely to be minimal since they can be resolved by reference to Defendants' records.

#### 3. Rule 23(b)(2) Ground for Class Action

██ In addition to asserting the ground set forth under Fed.R.Civ.P. 23(b)(3), Mr. Campion also seeks to certify his class action under Fed.R.Civ.P. 23(b)(2). That subsection provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on

---

**2.** In a suit brought by an individual, the FDCPA permits recovery of actual damages, discretionary damages up to $1,000, and costs and attorney's fees. *See* 15 U.S.C. § 1692k.

grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2).

 A suit brought by an individual under the civil liability section of the FDCPA sounds in tort because the relief provided for by the FDCPA is money damages. *See Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir.1982); 15 U.S.C. § 1692k. Equitable relief, such as an injunction, is not available in such actions. *See Sibley*, 677 F.2d at 834. Furthermore, certification under Fed.R.Civ.P. 23(b)(2) is inappropriate where the relief requested is predominately money damages, rather than injunctive or declaratory. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir.1998); *Nelsen v. King County*, 895 F.2d 1248, 1255 (9th Cir.1990).

Review of Mr. Campion's complaint reveals that the majority of relief requested is damages; attorney fees; disgorgement of money, interest, charges, fees and costs that Defendants collected from class members in garnishment proceedings; and penalties. He also seeks a declaratory judgment that Defendants' practices violate the FDCPA and or the WCPA, and permanent injunctions under the WCPA, Wash. Rev.Code § 19.86.090, prohibiting Defendants from attempting to collect unauthorized garnishment fees and costs and from collecting funds without first obtaining a garnishment judgment. However, these appear to the Court to be secondary to the money damages. Accordingly, Mr. Campion's motion for certification of a class action under Fed.R.Civ.P. 23(b)(2) is DENIED.

### 4. Conclusion

Plaintiffs have met their burden of proving that the Affidavit Class satisfies the requirements of Fed.R.Civ.P. 23(a) and (b)(3) with respect to the following common questions

(1) Whether the affidavits sent to the class members in support of writs of garnishment misrepresented the "legal status" of unawarded attorney fees and costs by describing them as "judgment" amounts;

(2) Whether the writs concerned obligations incurred for personal, family, or household purposes and not for business purposes;

(3) Whether the affidavits were delivered to the debtor class members; and

(4) Whether the affidavits were sent within the statute of limitations period for the FDCPA, WCAA and WCPA.

Accordingly, for the reasons set forth herein and on the record,

**IT IS HEREBY ORDERED:**

1. Defendant Miller's Motion to Dismiss Based Upon Lack of Standing, (**Ct.Rec.113**), is **DENIED.**

2. Plaintiff's Motion to Extend Time for Filing Part of Plaintiff's Reply to Defendants' Materials In opposition to Class Certification, (**Ct.Rec.132**), is **GRANTED.**

3. Plaintiffs' Motion for Leave to File Over–Length Brief Re Reply to Class Certification, (**Ct.Rec.135**), is **GRANTED.**

4. Plaintiff's Motion to Strike Affidavit of Paul A. Billberg, (**Ct.Rec.130**), is **GRANTED in part** and **DENIED in part,** as set forth herein.

5. Plaintiff's Motion for Class Certification, (**Ct.Rec.64**), is **DENIED as moot.** Plaintiff's Revised Motion for Class Certification, (**Ct.Rec.105**), is **DENIED in part** and **GRANTED in part** as is set forth herein.

No later than **March 30, 2001,** Plaintiffs shall file with the Court a proposed notice and distribution plan that provides to the Affidavit Class members the best notice practicable under the circumstances. The notice and plan shall comply with the requirements of Fed.R.Civ.P. 23(c)(2). Following Court approval, Plaintiffs shall distribute the notice to the Affidavit Class members in accordance with the distribution plan.

6. The District Court Executive shall **send a notice to the parties setting a scheduling conference in this matter.**

**IT IS SO ORDERED.** The District Court Executive is directed to:

1. Enter this Order;

2. Provide copies to counsel; and

3. Set a scheduling conference in this matter.