Michael H. BLOOM, Plaintiff,

v.

I.C. SYSTEM, INC., a Minnesota Corporation, Defendant.

Civ. No. 89–570–FR.

United States District Court, D. Oregon.

Nov. 30, 1990.

Richard L. Grant, Portland, Or., for plaintiff.

Andrew R. Gardner, Katherine A. McDowell, Stoel Rives Boley Jones & Grey, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of defendant, I.C. System, Inc. (I.C. System), for summary judgment and judgment on the pleadings (# 40).

## UNDISPUTED FACTS

On August 30, 1985, plaintiff, Michael H. Bloom, an attorney, executed a $5,000 promissory note to Steven Parker, a friend, in return for a loan of $5,000 in cash. Bloom and Parker were and are personal friends, and the loan was a personal loan from Parker to Bloom. At the time of the transaction, Parker did not know what Bloom was going to do with the money. Bloom used the proceeds from the loan as a venture capital investment in a software company.

Parker is an insurance agent and broker who resides in Redlands, California. Parker operated "Steven Parker Insurance," a sole proprietorship, from 1979 until 1987, when he incorporated his business under the name "Parkwest Insurance Services, Inc." (Parkwest). Parker did not assign the promissory note to Parkwest.

On February 14, 1986, Bloom gave Parker a cashier's check in the amount of $3,500 in partial satisfaction of the promissory note, thereby leaving an outstanding balance of $1,500.

I.C. System is a national collection agency. On May 12, 1988, Parkwest entered into a contract with I.C. System for debt collection services. Parker signed the contract with I.C. System on behalf of Parkwest. The contract for debt collection services provides that "[a]ll accounts submitted to I.C. ... will be deemed assigned and set over to I.C. for collection, and will be validly due and owing by the debtor." The contract for debt collection services was for the collection of the debts of Parkwest and did not provide for the collection of any debts owed to Parker personally.

On the same day that Parkwest entered into the contract with I.C. System, Parkwest submitted a debt in the amount of $6,619.19 for collection, listing Bloom as the debtor. Thereafter, I.C. System sent Bloom letters demanding payment of the debt and informed credit reporting agencies that the debt owed by Bloom had been submitted to I.C. System for collection.

In late 1988 and early 1989, I.C. System sent letters to Bloom regarding the $6,619.19 indebtedness owed by Bloom to Parker. Bloom contacted Parker and informed him of the error. Parker discovered that an employee of Parkwest, without his knowledge or consent, had mistakenly submitted the debt owing from Bloom to Parker to I.C. System for collection. Immediately after discovering the mistake, Parker advised I.C. System that the submission of the debt owing from Bloom to Parker was an error. Parker explained to I.C. System that Bloom did not owe and

never owed Parkwest any money and requested that I.C. System correct the credit history of Bloom. After telephone calls proved unsuccessful, Parker wrote to I.C. System on March 9, 1989 in reference to the account of Michael Bloom stating that:

This account was billed in error, please take immediate steps top [sic] delete any reference of this account made on behalf of your Corporation to all credit reporting agencies, including, but not limiting to CBI and TRW.

Again, this aboved [sic] referenced account was listed with your agency by mistake.

Please take immediate steps to remedy this error.

Thank you,

Steven C. Parker

Exhibit E to Plaintiff's Response.

Subsequent to the letter of March 9, 1989, I.C. System contacted Parker and explained that he needed to provide I.C. System further written verification that the debt of Bloom was not owed to Parkwest. Parker responded to I.C. System on March 31, 1989 with the following letter:

This account has never owed Parkwest Insurance Services, Inc. any money!

Again, this was billed in error, please take immediate steps top (sic) delete any reference of this account made on behalf of your Corporation to all credit reporting agencies, including, but not limited to CBI and TRW.

Please take immediate steps to remedy this error.

Thank you,

Steven C. Parker

Exhibit F to Plaintiff's Response.

Parker sent another letter dated April 4, 1989 stating in substance the same thing that he said in the letter of March 31, 1989. Parker received a telephone call from counsel for I.C. System asking for further documentation of the amounts owed by Bloom. Again Parker explained that Bloom did not owe any monies to Parkwest. Thereafter, I.C. System informed the credit reporting agencies that the debt was disputed and continued to request documentation of payment from Parker.

In May, 1989, Bloom filed this action against I.C. System for unlawful debt collection practices under two sections of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e and 1692f, as well as an alternative claim for libel.

In January, 1990, after confirming that Bloom had paid Parker $3,500, I.C. System informed credit reporting agencies that the balance of the disputed debt was $1,000.

## CONTENTIONS OF THE PARTIES

I.C. System asserts that it is entitled to judgment on the pleadings or for summary judgment on the claims of Bloom under the FDCPA because the debt at issue was as a matter of undisputed fact a business loan and the FDCPA does not cover non-consumer or business loans. I.C. System further argues that the libel claim of Bloom is insufficient because libel claims are preempted by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681h(e), unless malice or willful intent are alleged and proven. I.C. System points out that Bloom has not alleged malice on the part of I.C. System.

Bloom argues that the FDCPA covers the loan because the loan was a personal loan made to him by Parker for his personal use. Bloom argues that the proper inquiry is the intent of the lender (Parker) at the time the loan was made. Bloom contends that in any case the loan was for a personal investment and subject to the FDCPA. Finally, Bloom asserts that he has stated a claim for relief for libel under the FCRA.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to

be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976).

## ANALYSIS

*First Claim—Fair Debt Collection Practices Act (FDCPA)*

 The FDCPA applies only to consumer debts. A consumer debt is defined as "any obligation ... of a consumer to pay money arising out of a transaction in which the money ... which [is] the subject of the transaction [is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Under this definition, the use of the proceeds by the borrower is paramount. The motive or intent of the lender is irrelevant.

Both parties rely upon cases under the Truth in Lending Act (TILA), which is an Act concerned with consumer credit transactions, defined by statute as "primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h). In these cases, courts have concluded that the TILA does not apply where an examination of the transaction as a whole and the purpose for which credit was extended shows that the loan was primarily a business loan. *See, e.g., Poe v. First Nat'l Bank of DeKalb County,* 597 F.2d 895, 896 (5th Cir.1979); *Zimmerman v. HBO Affiliate Group,* 834 F.2d 1163, 1168 (3d Cir.1987); *Morse v. Mutual Fed. Sav. & Loan Ass'n of Whitman,* 536 F.Supp. 1271, 1275–78 (D.Mass. 1982).

The facts here are undisputed that Bloom used the money he borrowed from Parker as a venture capital investment in a software company. While this was a personal loan from Parker to Bloom, it was not made "primarily for personal, family, or household purposes" but was made for business purposes. As such, it is not subject to the FDCPA.

I.C. System's motion for summary judgment on the first claim is granted.

*Second Claim—Fair Credit Reporting Act (FCRA)*

Defamation claims are preempted by the FCRA, except for claims concerning "false information furnished with malice or willful intent to injure." 15 U.S.C. § 1681h(e). The facts show that Parker sent letters to I.C. System stating that the debt was mistakenly reported to I.C. System. However, the facts not to be controverted in the pretrial order are that 1) after Bloom contested the validity of the debt, I.C. System informed credit reporting agencies that the debt was disputed; and 2) I.C. System has continued to inform credit reporting agencies that the debt is disputed. Therefore, Bloom cannot prove that I.C. System acted with malice or willful intent to injure under these circumstances.

I.C. System's motion for summary judgment on the second claim is granted.

## CONCLUSION

I.C. System's motion for summary judgment and judgment on the pleadings (# 40) is granted.