Michael BLOOM, Plaintiff–Appellant,

v.

I.C. SYSTEM, INC., a Minnesota corporation, Defendant–Appellee.

No. 91–35060.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 6, 1992.

Decided Aug. 10, 1992.

Richard L. Grant, Portland, Or., for plaintiff-appellant.

Andrew R. Gardner, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for defendant-appellee.

Before: GOODWIN, TANG and THOMPSON, Circuit Judges.

GOODWIN, Circuit Judge:

This case involves a loan between two friends that was erroneously reported to a debt collection agency. In 1985, plaintiff

Michael Bloom, an attorney, borrowed $5,000 from his friend, Steven Parker. Bloom used the proceeds from the loan as a venture capital investment in a software company. Parker did not necessarily know or care what the money was being used for.

Parker is an insurance agent and president of Parkwest Insurance Services, Inc., ("Parkwest"). In 1988, Parkwest entered into a contract with defendant I.C. System ("I.C.") for debt collection services. Unknown to Parker, a Parkwest employee submitted a debt for collection listing Bloom as the debtor. I.C. commenced collection efforts.

Bloom notified Parker of the mistake and Parker made efforts by phone and letter to explain that Bloom's reported debt was an error. I.C. responded by requesting further written documentation to verify the fact that no debt was owed. Thereafter, I.C. listed the debt as contested.

In May 1989, Bloom filed suit against I.C. alleging unlawful debt collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. §§ 1692e, 1692f, as well as an alternative state law claim for libel. The district court granted the defendant's motion for summary judgment on both claims. *See Bloom v. I.C. System, Inc.*, 753 F.Supp. 314 (D.Or. 1990). We affirm.

## I.

The FDCPA protects consumers from unlawful debt collection practices. Consequently, the Act applies to consumer debts and not business loans. The term "debt" is defined as:

[A]ny obligation or alleged obligation *of a consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily*

*for personal, family, or household purposes ...*

15 U.S.C. § 1692a(5) (emphasis added).

Bloom correctly argues that given the small number of cases interpreting the term "debt" under the FDCPA, courts in other jurisdictions have looked for guidance to cases interpreting analogous provisions of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 to 1693r, such as the Truth in Lending Act ("TILA").[1] *See Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168 (3d Cir.1987). When classifying a loan, courts typically "examine the transaction as a whole," paying particular attention to "the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature." *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir.1980).

The interpretation of the term "debt" under the FDCPA is apparently a matter of first impression for this court. Bloom urges us to characterize the loan as personal rather than commercial because the loan was informal in nature, with none of the trappings of a commercial loan, and because Parker's motivation in lending the money was personal rather than business in nature. We are not persuaded. The fact that a loan is informal or that the lender may have loaned the money for personal reasons does not make it a personal loan under the FDCPA. The Act characterizes debts in terms of end uses, covering debts incurred "primarily for personal, family or household purposes." Neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry.

How Bloom actually spent the money is not disputed. Bloom invested the proceeds of the loan as venture capital in a software company with which he was closely associated. Bloom candidly admitted in his deposition that this was the intended purpose of the loan.

---

1. The TILA defines a consumer loan as: "[A transaction] in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes."
15 U.S.C. § 1602(h).

Q. [By Mr. Gardner] And what was the purpose of the loan or of borrowing the money? What was your purpose in borrowing $5,000?

A. [By Mr. Bloom] I used the money for venture capital in an investment I was involved in, in and about that time.

The only issue is whether this intended use can be characterized as "primarily for personal, family or household purposes." We hold that it cannot. Bloom borrowed the money to invest in a software company. This was a business loan.

Bloom cites *Thorns v. Sundance Properties*, 726 F.2d 1417 (9th Cir.1984), for the proposition that, under the TILA, the mere fact that a loan is used for investment purposes does not necessarily render it a commercial loan. *Thorns* held that the factors employed by the Federal Reserve Board under Regulation Z, *see* 12 C.F.R. § 226 Supp. 1, § 226.3(a)(2), are relevant in determining whether a transaction is commercial or personal for the purposes of the Truth in Lending Act. *See* 726 F.2d at 1419. The *Thorns* court expressed no opinion as to the factual issues involved in the case and stated that "[w]hether an investment loan is for a personal or a business purpose requires a case by case analysis." *Id.*

Even if we were to apply the factors identified in *Thorns*, it would not alter our conclusion. Bloom was president of the company he invested in and he represented the venture in his capacity as an attorney. Consequently, Bloom, the borrower, personally managed important aspects of the investment. Finally, the stated purpose of the loan was "for venture capital in an investment." The *Thorns* factors simply reinforce the contention that this was a commercial loan.[2]

## II.

■ The Fair Credit Reporting Act ("FCRA") requires credit reporting agencies to disclose extensive credit information to consumers. *See* 15 U.S.C. § 1681g. To limit the potential scope of liability for these agencies, Congress preempted state common law defamation claims.

Except as provided in §§ 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation ... with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to 1681g ..., *except as to false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added).

■ Bloom argues that I.C. acted with malice because it refused to delete information regarding the debt. A collection agency does not have a duty to delete all references to a debt whenever such debt is contested. I.C. reported the debt as disputed when it learned of the controversy. Moreover, the record demonstrates that I.C. took reasonable steps to verify the information in the report.

The following facts are not in dispute. In late 1988, under a contract with Parkwest which provided that "[a]ll accounts submitted to I.C. ... will be deemed assigned and set over to I.C. for collection, and will be validly due and owing by the debtor," I.C. received a debt naming Bloom as the debtor. Upon Bloom's prompting, Parker made phone calls and wrote letters stating that no debt existed. In March 1989, I.C. requested further written verification that no debt was owed. Thereafter, I.C. informed credit reporting agencies that the debt was disputed. In May 1989, Bloom filed suit.

Bloom argues that it was "false" to report the debt as disputed because both Bloom and Parker represented that no debt existed. The representations of the parties do not explain, from I.C.'s perspective, how or why such a loan was submitted for collection in the first place. The debt had

---

**2.** Given that nothing turns on the issue, we leave open the question of whether the standards governing what constitutes a consumer debt under the FDCPA may ever differ from those determining what constitutes a consumer loan under the TILA.

been properly submitted under a valid contract. Under the circumstances, I.C.'s decision to list the debt as disputed and to seek written verification that no debt was in fact owed was not unreasonable. Such conduct does not constitute malice or the willful intent to injure.

The district court's grant of summary judgment is AFFIRMED.