**Michelle HANSEN, et al., Plaintiff(s),**

v.

**TICKET TRACK, INC., Defendant(s).**

No. C02–1032P.

United States District Court,
W.D. Washington
at Seattle.

July 21, 2003.

See also, 213 F.R.D. 412.

Patrick S. Brady, Forsberg & Umlauf, Seattle.

Juli E Farris, Keller Rohrback, Seattle.

Carl Edward Forsberg, Forsberg & Umlauf, Seattle.

Michael P Hooks, Forsberg & Umlauf, Seattle.

Alexander Perkins, Keller Rohrback, Seattle.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PECHMAN, District Judge.

This matter comes before the Court on defendant Ticket Track, Inc.'s ("Ticket Track") motion for summary judgment. (Dkt. No. 85) Plaintiff class in this case alleges that Ticket Track, which operates as a debt collector for owners of unmanned parking lots, unlawfully collected fees in addition to the principal amounts of parking fees. Plaintiffs assert that collection of these fees was in violation of the Washington Collection Agencies Act, RCW § 19.16.100 et seq. ("WCAA"), the Washington Consumer Protection Act, RCW § § 19.86.010–19.86.920 ("WCPA"), and the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). In addition, plaintiffs allege that Ticket Track and the parking lot owners constituted an "enterprise" engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations

Act ("RICO"). 18 U.S.C. § 1962. Having reviewed the pleadings and papers submitted by the parties, the Court hereby GRANTS IN PART AND DENIES IN PART the defendant's motion. Specifically, the Court DENIES defendant's motion for summary judgment and GRANTS summary judgment in favor of the plaintiff class on the WCAA and WCPA claims, as defendant's collection of the contractually-imposed violation fee was in violation of RCW 19.16.250(18). Next, the Court DENIES summary judgment concerning plaintiff's FDCPA claims. Finally, the Court GRANTS summary judgment in favor of the defendant on plaintiff's RICO claims, as the defendant's activities did not constitute an "enterprise" within the meaning of RICO.

## BACKGROUND

Defendant Ticket Track is a state-licensed collection agency that contracts with owners (or managers) of unmanned parking lots for collection of unpaid parking fees, a debt that arises when customers park in the lots and fail to pay the required fee. Customers are made aware of their obligation to pay and the possible imposition of extra fees for failure to pay by way of large signs posted at each of the lots. With some slight variation, those signs read:

PERMIT PARKING ONLY UNAUTHORIZED OR OVERTIME OR IMPROPERLY PARKED VEHICLES WILL BE CHARGED UP TO AN ADDITIONAL $50 VIOLATION FEE 24 HOURS A DAY COLLECTED BY TICKET TRACK 1–800–207–9551

Griffin Decl. Ex 9. These signs are provided by Ticket Track, and the parking lot owners are contractually required to post them at their lots. At oral argument, defense counsel clarified that this sign is separate from a second sign that is posted by the parking lot owners that lists the rates for parking in the lot.

In accordance with Ticket Track's contracts, when a customer fails to pay (or fails to pay enough), the owners assess a "violation fee" and typically attempt to collect the debt through notice placed on the customer's windshield along with a payment envelope. That notice states that failure to pay within 30 days will result in "further collection action, additional search fees, and possible impounding in the event of further violations." Griffin Decl. Ex 11. It also reads: "This is an attempt to collect a debt." *Id.* Ticket Track provides the lot owners with expiration stickers for use on its notices and/or pay envelopes placed on the cars or mailed to lot customers who have allegedly failed to pay the required fee. Griffin Decl. Exs. 10, 11. The stickers read: "Additional $25.00 surcharge waived if paid within 14 days—Ticket Track." Griffin Decl. Ex. 10. The pay envelopes are addressed to Ticket Track. Griffin Decl. Ex. 11.

Apparently, the owners may opt to waive the violation fee if a customer pays in full in a timely manner. After 7 to 14 days, however, the debt is assigned to Ticket Track, who bills the debtor a lump sum amount, including the previously-added violation fee. Thus, the lot owners are contractually required to charge a violation fee prior to referring the debt to Ticket Track. If Ticket Track is successful in collecting the amount owed, Ticket Track retains some or all (typically $25) of the added fee, while the underlying debt owed by the customer (plus any remainder of the violation fee) is remitted to the parking lot owner.

The plaintiff class asserts that this business practice is illegal under the Washington Collection Agencies Act, RCW § 19.16.100 et seq. ("WCAA"), the Washington Consumer Protection Act, RCW

§ § 19.86.010–19.86.920 ("WCPA"), the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962.

By prior order, the Court certified the following class:

> All persons with addresses in the State of Washington on whose claims the statute of limitations has not run who were sent, or will be sent during the pendency of this action, a letter from defendant Ticket Track demanding payment of an obligation incurred for personal, family, or household purposes relating to an unpaid parking ticket, which was not returned as undelivered by the Post Office, where the amount demanded exceeds the amount of the originally assessed parking ticket.

Ticket Track now brings this motion for summary judgment on most of plaintiffs' claims. First, it argues that the WCAA (and WCPA) claims should be dismissed because Ticket Track did not actually impose the violation fees, and because an implied contract with each of the customers authorized the assessment of such fees. Second, Ticket Track argues that the FDCPA claims should be dismissed on three grounds: 1) because the amounts owed are not "debt" within the meaning of the act, since the failure to pay parking fees does not constitute a "transaction" within the meaning of the act; 2) because plaintiffs' obligations did not arise out of transactions involving "personal, family or household purposes;" and 3) because the amounts collected are "authorized by the agreement creating the debt." Ticket Track also argues that at the very least, the claims of three of the individual named-plaintiffs should be dismissed because they cannot verify that they parked in the lots for "personal, family or household purposes." Finally, Ticket Track argues that plaintiffs' RICO claims must be

dismissed because plaintiffs cannot show the requisite "enterprise" needed for liability.

The Court notes at this time that defendant's motion does not specifically address several claims listed in the complaint, namely claims brought under 15 U.S.C. § 1692(e) and RCW 19.16.250(8) and (19). The Court also notes that it is unclear whether these alleged violations are indeed included in the allegations of the presently certified class. In any case, the Court declines to reach issues not moved on by the parties.

## ANALYSIS

### 1. *Summary Judgment Standard*

This matter is before the Court on defendants's motion summary judgment. Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the non-moving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. If indeed there is no material issue of fact, the court may grant summary judgment in favor of the movant, or may sua sponte grant summary judgment in favor of the non-movant, even in the absence of a cross-motion, where denial of summary judgment would essentially be a grant of summary judgment for the other party. *Kassbaum v. Steppenwolf Prods., Inc.,* 236 F.3d 487, 494 (9th Cir.2000).

2. *Claims under the Washington Collection Agencies Act ("WCAA") and the Washington Consumer Protection Act ("WCPA")*

[1] The WCAA requires licensing of debt collection agencies and places specific restrictions on debt collection practices. Relevant to the present matter, the WCAA makes it unlawful for a licensed collection agency to:

> Collect or attempt to collect *in addition to the principal amount of a claim any sum* other than allowable interest, collection costs or handling fees expressly authorized by statute, and in the case of suit, attorney's fees and taxable court costs. A licensee may collect or attempt to collect collection costs and fees, including contingent collection fees, as authorized by a written agreement or contract, between the licensee's client and the debtor, in the collection of a commercial claim. The amount charged to the debtor for collection services shall not exceed thirty-five percent of the commercial claim.

RCW 19.16.250(18) (emphasis added). The Act also makes it unlawful to:

> Procure from a debtor or collect or attempt to collect on any written note,

contract, stipulation, promise or acknowledgment under which a debtor may be required to pay any sum other than principal, allowable interest, except as noted in subsection (18) of this section, and, in the case of suit, attorney's fees and taxable court costs.

RCW 19.16.250(19). A "collection agency" is defined as "[a]ny person ... engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person." RCW 19.16.100(2)(a).

To be clear, what the act makes illegal is the *collection* of *any sum other than the principal amount of the claim* and some specifically stated exceptions, or the attempt to procure an agreement that such sums are collectable. Furthermore, these practices are only prohibited for *collection agencies* who collect debt for "another person." What does not appear to be unlawful is the imposition and collection of such additional amounts by the actual creditor, in this case, the parking lot owners. Therefore, the critical issue in this entire cause of action is whether the "violation fees" imposed by the owners can be considered part of the "principal amount" of the debt, or are these fees "any sum other than" the principal amount. In the present case, this inquiry is heavily factually driven, but no material facts are in dispute.

On this issue, defendant asserts that it does not impose any of the fees, and therefore the referred amount constitutes the "principal amount" of the debt. On its face, that may be true, but all underlying facts indicate that this is a fee that is imposed and collected by Ticket Track. First, every one of the contracts submitted to the Court contain a clause that obligates the parking lot owners to assess a "violation fee." *See* Griffin Decl. Ex. 5. The clauses then dictate the allocation of recov-

ered funds between the lot owners and Ticket Track. *Id.* Each of the more recent contracts reference an "Addendum A" rather than expressly stating a dollar amount in the body of the contract. *Id.* That addendum contains blanks to be filled in by the parties, designating the "total amount for the violation fee" to be assessed by the lot owners, as well as an allocation of that fee to be paid to the owners and to Ticket Track. *See generally,* Griffin Decl. Ex. 4. Ticket Track typically receives $25 of the assessed amount. More often than not this equals the total amount of the violation fee. In no case is the total amount of the additional fee less than the amount given to Ticket Track.

Furthermore, all public representations of the imposition of the fees indicate that the fees are assessed or at least collected by Ticket Track, not the lot owners. The signs posted at each of the lots (which is required by contract) each contain Ticket Track's name on them, not that of the lot owners. The notices placed on customers' cars generally have a Ticket Track sticker on them indicating that additional fees will be waived if the parking fee is paid within 14 days. Those stickers at least imply that it is *Ticket Track* that will waive the additional fee. The collection envelopes are sent to Ticket Track, even if paid within 14 days. Thus, in all respects, it appears that Ticket Track is the entity responsible for collection (and even imposition) of the additional fees. The only thing Ticket Track doesn't do is place the notices on the cars.

Defendant argues that it had an implied contract with each of the members of the plaintiff class, and that such contract included a clause for additional fees to be imposed in the event that a customer failed to pay the required parking fee. Defendant further argues, without justification

or authority, that the implied contracts entitled them to collect the additional violation fees. Plaintiffs conceded at oral argument that an implied contract existed, but argued that a person cannot agree to accept an illegal fee.[1] The Court finds this reasoning persuasive. It is well established that a contract or contract provision that is "contrary to the provisions of any statute [is] void." *Coey v. Low,* 36 Wash. 10, 17, 77 P. 1077 (1904); *see also Evans v. Luster,* 84 Wash.App. 447, 450, 928 P.2d 455 (1996) Regardless of the relationship between the customers and lot owners, Ticket Track violates the WCAA if it is collecting "any sum" "in addition to the principal amount." Any implied contract purporting to allow Ticket Track to collect such fees is void and unenforceable. Even if this implied contract is a written one, the Court finds that this is not a "commercial claim" for reasons addressed below. RCW 19.16.250(18). Independently, it seems that any such implied contract, because it is initiated by Ticket Track through its contracts with the lot owners, would be prohibited by RCW 19.16.250(19).

The Court finds that Ticket Track's collection of the "violation fee" was contrary to the WCAA, but it does so with reservation. Plaintiffs are not in a sympathetic position. The plaintiff class is logically comprised of persons who failed to pay for services for which they knew they had an obligation to pay, and even after they were reminded that they had to pay via the windshield notice. It seems only just that persons who park and walk away from their obligation should have to pay something extra as a deterrent to such inexcusable and dishonest behavior in the future. Yet this Court's holding that Ticket Track's contractual arrangement and collection of "violation fees" runs afoul of the

---

1. Logically, there may even be *two* implied contracts: one for parking fees with the lot owner, and one with Ticket Track for "violation fees."

statute does not leave the parking lot owners without alternatives. There are probably ways that imposition (and even collection) of such fees could be done legally. But the present arrangement simply cannot be reconciled with the language of the WCAA. The Court hereby finds that under the facts of this case, Ticket Track violated RCW 19.16.250(18) by collecting "violation fees" that it contractually arranged to impose on parking violators. The violation fees were additional sums, not part of the "principal amount." Because there is no material issue of fact, and because denial of the motion for summary judgment necessarily results in summary judgment in favor of the non-movant, the Court hereby GRANTS summary judgment on liability in favor of the plaintiff class on this cause of action.

It is undisputed that violations of RCW 19.16.250 also constitute violations of the Washington Consumer Protection Act, RCW 19.86.20. *See* RCW 19.16.440. Thus, the Court GRANTS summary judgment on this cause of action in favor of the plaintiffs.

### C. *Claims under the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692*

The FDCPA makes it unlawful for a debt collector to use unfair or unconscionable means to collect a debt. In particular, the act prohibits:

> The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f (1). A "debt collector" is a "person who uses any instrumentality of interstate commerce or the mails ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due anoth-er." 15 U.S.C. § 1692a(6). A "debt" within the meaning of the act is:

> any obligation or alleged obligation of a consumer to pay money *arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes,* whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added).

Defendant argues that the FDCPA claims should be dismissed for three reasons: 1) there was never a "transaction" as contemplated by the act, and therefore no "debt" was created; 2) the three named plaintiffs who cannot remember why they parked cannot show that the debt arose out of a transaction "primarily for personal, family, or household purposes"; and 3) the imposition of the fees was "expressly authorized by the agreement creating the debt."

#### 1) *"Transaction" and "Debt" within the Meaning of the FDCPA*

■ Defendant first argues that the customers' obligation to pay the lot owners does not constitute "debt" within the meaning of the act because their nonpayment of parking fees does not constitute a "transaction." This is true, defendant argues, because a "transaction" cannot be read to include theft of goods or services. Defendant cannot have it both ways. On the one hand, defendant argues that there is an implied contract that its customers have breached by failing to pay the appropriate fees. On the other hand, defendant argues that no "debt" is created within the meaning of the act because the customers are stealing services.

Defendant's reliance on *Zimmerman v. HBO Affiliate Group,* 834 F.2d 1163, 1168 (3d Cir.1987), is misplaced. In that case, the defendant cable television companies

attempted to collect amounts related to alleged piracy of their television signals by the plaintiffs. The defendants had sent each of the plaintiffs a letter clearly stating that legal action would be taken against them for interception of microwave signals, and that the letter constituted an offer of settlement for all past and present claims against them. *Id.* at 1166. The court held that because the letters were "offers of settlement" of plaintiffs' potential tort liability, the obligation was not "debt" within the meaning of the act because there was never a "transaction" for services. *Id.* at 1168. This holding was founded on the premise that a transaction giving rise to a debt within the meaning of the act must involve the "offer or extension of credit to a consumer." *Id. See also Shorts v. Palmer,* 155 F.R.D. 172 (S.D.Ohio 1994) (attorney letter requesting payment of civil damages for alleged attempted theft of cigars was offer of settlement of tort claim obligation not arising out of a credit transaction).

In the present case, defendant appears to have always treated plaintiffs' obligations as contractual in nature, not tortious. All of defendant's documents, including the notices, collection envelopes, and collection letters indicate that Ticket Track is a debt collection agency attempting to collect a debt. If Ticket Track considered the acts of the plaintiffs to be a "theft of services," there would be no "debt" to be collected; instead, "damages" would be claimed. No where in any of the notices, envelopes or letters was there any reference to settlement of a tort claim resulting from trespassing or conversion. Defendant should not be able to change its basis for its original claims mid-stream.

The Court also notes that neither *Zimmerman* nor *Shorts* involved a self-proclaimed "debt collection agency" such as Ticket Track, but rather concerned attorney letters threatening legal action if set-

tlement was not reached. The present case is therefore factually distinguishable from the above-cited cases. In any event, the rationale requiring an "offer or extension of credit" that underlies those cases has been expressly rejected by the Ninth Circuit. *See Charles v. Lundgren and Assocs., P.C.,* 119 F.3d 739, 742 (9th Cir. 1997); *see also, Thies v. Law Offices of William A. Wyman,* 969 F.Supp. 604, 607 (S.D.Cal.1997) (obligation arising out of refusal to pay homeowners association fees is "debt" within the meaning of FDCPA). The Court holds that the debt that Ticket Track was attempting to collect arose out of a "transaction" within the meaning of the FDCPA, specifically out of an implied contract between the parties.

### 2. "Personal, Family, or Household Purposes" and the Three Named Plaintiffs

■ Defendant next argues that FDCPA claims should be dismissed regarding the three named plaintiffs who cannot remember the reasons they parked on the occasion that led to the imposition of the violation fees because they cannot show that the debt was incurred "primarily for personal, family, or household purposes."

An examination of the relevant case law is instructive. In *Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1068 (9th Cir.1992), the plaintiff borrowed $5000 from a friend and used the money as a venture capital investment in a software company. When the debt was later referred to a collection agency, plaintiff brought suit against the agency for unlawful collection practices in violation of the FDCPA. *Id.* The court first addressed the threshold issue of whether the loan was a debt incurred "primarily for personal, family, or household purposes." *Id.* In determining that this constituted a "business loan" and was thus

outside the protections of the FDCPA, the Ninth Circuit "examine[d] the transaction as a whole, paying particular attention to the purpose for which the credit was extended." *Id.* (internal quotations omitted). While in that case, the court found that the *purpose* of the loan was nearly dispositive of the issue, it also examined such factors as the capacity in which the borrower accepts the loan, i.e. in an official capacity for a company or in a personal capacity. *Id.citing Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir.1984). The court also specifically held that the lender's motives in extending credit and the degree of formality of the loan documentation were *not* relevant to the inquiry.

In *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1073 (9th Cir.2001), plaintiff took out a loan to purchase a backhoe in his company's name. The loan was eventually referred to a collection agency, which attempted to collect on the loan. Plaintiff brought suit alleging violations of the FDCPA, claiming that the backhoe was used only for personal purposes. The District Court found that the loan was for business purposes, and granted summary judgment in favor of the defendant collection agency. In making this determination, the court considered the following facts: the company name was listed on the invoice, the company name was listed on the building permit for the work that was done, and the backhoe was listed on the company's tax return. The Ninth Circuit reversed, holding that while the documents presented certainly constituted "substantial ... evidence suggesting that the backhoe was purchased for business purposes," the district court had erred in failing to consider factors such as the loan documents, the actual use of the backhoe for strictly personal purposes, and the fact that the company never used the backhoe. *Id.* at 1075–76.

■ From this analysis, the Court finds that the determination of whether a debt is incurred "primarily for personal, family, or household purposes" is a fact driven one, and should be decided on a case-by-case (not necessarily plaintiff-by-plaintiff) basis looking at all relevant factors. In the present case, the Court finds the nearly-dispositive factor to be the identity of the individual plaintiff and whether the debt was incurred and paid in their personal capacities or some other capacity. It is undisputed that each of the three named plaintiffs paid the obligation out of personal funds. This was not a transaction between two business entities. The defendant argues that a plaintiff's reason for parking in the lot, i.e. the errand that they happened to be running that day, is the only relevant inquiry. While this factor is potentially relevant, in nearly every case it will be outweighed by the "identity" or "capacity" of the debtor. The Court finds that context of the present case significantly distinct from the loan context in the above-cited cases giving significant weight to the "purpose" of the obligation. This is so because the "purpose" of the obligation incurred by the parking plaintiffs cannot be equated with the "purpose" of the errand they happened to be running. Here, where the debt was paid with personal funds, the nature of the obligation is a personal one, not a business one. Because the three named plaintiffs incurred the debt in their personal capacities and paid the obligation from personal funds, the Court DENIES summary judgment on this issue.

3. *"Expressly Authorized by the Agreement Creating the Debt"*

■ Finally, defendant argues that the plaintiffs' FDCPA claim must be dismissed because the amounts to be collected are "expressly authorized by the agreement creating the debt." Ticket Track

asserts that an agreement existed between each of the plaintiffs and the lot owners that allowed for the imposition of additional fees. This is evidenced by the signs posted at each lot. *See* Griffin Decl. Ex. 9. Because plaintiffs were given notice that these fees would be added if they failed to properly pay, Ticket Track argues that the imposition of such fees was "expressly authorized." As held above, any implied contractual provision that is contrary to the provisions of any statute is void and unenforceable. Because the contractual provision purporting to authorize the imposition of additional fees is void under state law, it cannot be implicated to show compliance with the Federal statute.

Based on the above analysis, the Court DENIES defendant's motion for summary judgment on plaintiffs' claims under the FDCPA.

### D. *Claims under RICO, 18 U.S.C. § 1962*

Plaintiffs allege that the defendants violated 18 U.S.C. § 1962(c) of RICO, which prohibits the conduct of an enterprise through a pattern of racketeering activity. Specifically, plaintiffs allege that defendants engaged in an enterprise of racketeering through the collection or attempts to collect an unlawful collection fee, committing thousands of acts of mail fraud in the process. (Compl.¶ 13–14). To prove liability under § 1962(c), plaintiffs must establish: (1) the existence of an enterprise that affected interstate or foreign commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity. *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309–10 (9th Cir.1992), *cert. denied,* 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993). Defendants contend that

plaintiffs have failed to show that an "enterprise" exists within the meaning of the statute, and only this element appears to be at issue.

RICO defines the term enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.1961(4). Plaintiffs claim that Ticket Track, its employees, and the individual lot owners or entities constitute an "association-in-fact enterprise." An association-in-fact enterprise is an ongoing organization, either formal or informal, whose members function as a continuing unit for a common purpose. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). This "enterprise" element must be different from the "pattern of racketeering activity" element. *Chang v. Chen*, 80 F.3d 1293, 1298 (9th Cir.1996). Plaintiffs must go beyond simply pleading a conspiracy and demonstrate a structure to the defendants' collusion beyond and separate from the illegal racketeering activities. *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1083–84 (9th Cir.2000), *amended on other grounds*, 234 F.3d 428 (9th Cir.2000), *cert. denied,* 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001). In other words, plaintiffs must show an "organization separate and apart from that inherent in the perpetration of the alleged [unlawful] transactions." *Chang,* 80 F.3d at 1301.

Plaintiffs also argue that this case involves legitimate corporations that made the RICO activities possible, and as such, they constitute a RICO enterprise. Indeed the Ninth Circuit's *Feldman* decision appeared to. hold, as some courts have concluded, that the very naming of a corporation as part of the enterprise meets the requirement for a separate structure. *United States v. Feldman,* 853 F.2d 648,

660 (9th Cir.1988), *cert. denied,* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989); *see also Dumas v. Major League Baseball Props., Inc.,* 52 F.Supp.2d 1170, 1178 (S.D.Cal.1999), *vacated,* 104 F.Supp.2d 1220 (S.D.Cal.2000). *Feldman* reasoned that the corporate entities in the matter had a legal existence separate from their participation in the racketeering activity, since they existed to carry on legitimate business activities as well as the racketeering activities. *Id.* Yet commentators and judges have criticized the logic of *Feldman. See, e.g.,* David B. Smith and Terrance G. Reed, *Civil RICO* ¶ 3.06, 3–50–64 (2001); *Dumas,* 52 F.Supp.2d at 1178. Smith and Reed are particularly critical in describing what often may be a mere pleading device:

> All one can say is that it makes it much easier to plead and prove an association in fact if the mere inclusion of a legitimate entity satisfies the "structure" requirement.... This presumably will lead prosecutors in the Ninth Circuit to include innocent individuals in any association in fact enterprise they charge in order to demonstrate that the enterprise is separate and distinct from the pattern of racketeering activity.

Smith and Reed at ¶ 3.06, 3–62.

More recent Ninth Circuit cases have chipped away at the *Feldman* holding, but not overruled it. In *Chang,* the Ninth Circuit found that an association-in-fact enterprise with a corporate participant, which existed solely to engage in fraud, did not state an enterprise separate from the pattern of racketeering. *Chang,* 80 F.3d at 1300–01. In so deciding, *Chang* used language that indicated a broader holding, including in its separate enterprise analysis such factors as a "the existence of a system of authority," "decision-making apparatus," and structure to distribute proceeds of the transactions. *Id.* at 1300. *Simon* positively cites these quotes from *Chang* in holding that an alleged "mass conspiracy" of 1,600 insurance companies, employee benefit plans, employers and governmental entities did not state an enterprise separate from the racketeering activity. *Simon,* 208 F.3d at 1083–84. *Simon* is of particular importance to the defendant because it rejects an association-in-fact enterprise that includes legitimate corporations.

The Court acknowledges that the Ninth Circuit case law defining an association in fact using the "separate structure" analysis is less than clear. Nevertheless, the Court finds that plaintiffs have failed to demonstrate that there was any separate structure apart from the structure that carried out the collection of illegally-imposed debt. Plaintiffs argue that the organization was involved in both illegal and legal *activities,* but this is not the entire inquiry. Plaintiffs must also establish that there was a separate *structure* that engaged in conduct constituting the pattern of racketeering activity. Here, there was not. There is no allegation that there existed some subset of actors that carried out the illegal collections that was distinct from the actors who carried out the legal ones. Thus there is no separate system of authority or decision-making apparatus other than the one that carried out the alleged racketeering activity. Furthermore, there is no allegation that proceeds were distributed utilizing "a structure separate and apart from the predicate acts." *Chang,* 80 F.3d at 1300. Here, proceeds were allocated to the members of the alleged enterprise in a manner consistent with an ordinary business. Quite simply, plaintiffs have failed to show anything beyond a conspiracy, and a "conspiracy is not an enterprise for purposes of RICO." *Id.*

■ The Court rejects plaintiffs' RICO claims on another ground. Plaintiffs characterize Ticket Track's business operations as existing for the dual purpose of collec-

tion of legally-imposed debts and collection of illegally-imposed debts. Thus, plaintiffs argue, Ticket Track "has an existence separate from [their] participation in the racketeering activity." Opp'n at 20. Yet the more proper characterization of Ticket Track's business operations is one of a collection agency. Ticket Track is in the business of collection of debts. That some of those debts (or the collection thereof) later turn out to be unlawful does not establish a separate structure as required under RICO as interpreted by the Ninth Circuit. For each of these reasons, the Court GRANTS summary judgment in favor of the defendant on plaintiffs' RICO claims.

## CONCLUSION

Based on the foregoing analysis, the Court hereby GRANTS IN PART AND DENIES IN PART the defendant's motion. Specifically, the Court DENIES defendant's motion for summary judgment and GRANTS summary judgment in favor of the plaintiff class on the WCAA and WCPA claims, as defendant's collection of the contractually-imposed violation fee was in violation of RCW 19.16.250(18). Next, the Court DENIES summary judgment concerning plaintiff's FDCPA claims. Finally, the Court GRANTS summary judgment in favor of the defendant on plaintiff's RICO claims, as the defendant's activities did not constitute an "enterprise" within the meaning of RICO.

The Clerk is directed to send copies of this order to all counsel of record.