**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-1873**

———————

ROBERT C. SMITH,

        Plaintiff - Appellant,

      v.

EVB, a Virginia Corporation,

        Defendant – Appellee,

      and

ARCHIE C. BERKELEY, JR.,

        Defendant.

———————

**No. 11-1081**

———————

ROBERT C. SMITH,

        Plaintiff - Appellant,

      v.

EVB, a Virginia Corporation; ARCHIE C. BERKELEY, JR.,

        Defendants - Appellees.

———————

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Chief District Judge. (3:09-cv-00554-JRS)

———————

Submitted:  June 29, 2011              Decided:  July 12, 2011

_____

Before WILKINSON and WYNN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

Robert C. Smith, Appellant Pro Se.  Samuel Miles Dumville, Stacy
Leann Haney, Alison Ross Wickizer Toepp, REED SMITH, LLP;
Michele Mulligan, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In these consolidated appeals, Robert Smith appeals the district court's grant of summary judgment in favor of Archie C. Berkeley and EVB as well as the court's award of $22,235.90 in attorneys' fees. For the reasons that follow, we vacate the judgment of the district court and remand.

In 2004, Robert Smith obtained a credit loan (the "2004 loan") from the Bank of Goochland ("BOG") through Piedmont Construction, LLC ("Piedmont") a company owned by Smith. The loan had an initial principal balance of $210,000 and a maturity date of June 30, 2005. Between 2004 and 2006, Smith renewed the loan three times, and each time submitted a disbursement request and authorization ("DRA") form. On each DRA form, a box was checked indicating that the primary purpose of the loan was "Business (Including Real Estate Investment)." Smith argues, however, that he made contemporaneous representations to BOG officers that the loan was for personal purposes only.

According to Smith, the purpose of the 2004 loan was the purchase and ownership of Smith's personal residence ("the Wilton House"). Smith contends that he created Piedmont for the sole purpose of obtaining the loan and owning the property ("the Wilton Plat") on which the Wilton House sat. Although the 2004 loan was made to Piedmont, it was secured by an interest in Smith's residence. According to Smith and his accountant,

3

Piedmont has never conducted any other commercial activity and its sole function was to hold the property Smith used as his residence.

In 2006, Smith personally obtained a second loan (the "2006 loan") from BOG for $250,000. The DRA accompanying this loan stated that it was primarily for personal, family, or household purposes. Smith used $200,000 of the 2006 loan to pay off the balance of the 2004 loan. It is undisputed that Smith has always represented that the 2006 loan was for personal purposes.

In 2008, BOG assigned the 2006 loan to EVB. EVB and its substitute trustee, Archie Berkeley, claimed that Smith defaulted on his obligations under the note and Smith claims that EVB and Berkeley threatened foreclosure of the Wilton Plat. Smith brought a complaint against EVB and Berkeley under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (2006). He claimed in his complaint that EVB and Berkeley failed to provide Smith with a copy of the assignment agreement, made threatening phone calls, and intentionally published a foreclosure notice that they knew to be based on false financial information.

Berkeley answered the complaint. Rather than answering, EVB joined a motion to dismiss, or in the alternative, for summary judgment, filed by Berkeley. EVB and

4

Berkeley's main contention in support of dismissal or summary judgment was that the 2006 loan was not a "debt" within the meaning of the FDCPA. In response, Smith moved for leave to file an amended complaint. The district court granted leave to amend with respect to the complaint against EVB only because Smith could, as a matter of right, amend his complaint at any time before a responsive pleading was filed. The court granted summary judgment in favor of Berkeley and denied leave to amend on the grounds that amendment would be futile.

The district court based its decision to award summary judgment in favor of Berkeley on two conclusions: that Smith was estopped from arguing that the 2004 loan was a personal debt, and that because the 2006 loan paid off the 2004 loan, it too was a business debt. EVB answered the amended complaint and moved for summary judgment, and Smith moved, pursuant to Fed. R. Civ. P. 59(e), to alter or amend the judgment in favor of Berkeley.

The district court denied the Rule 59 motion and granted summary judgment in favor of EVB. The court ruled that Smith's amended complaint and opposition to summary judgment had failed to change the court's ruling as it was applied in its grant of summary judgment in favor of Berkeley. The court also ruled that Smith had failed to put forth a proper reason for Rule 59 amendment, and denied the motion.

5

The court ultimately awarded attorneys' fees to EVB and Berkeley totaling over $22,000. The court concluded that any filings (including opposition to summary judgment and the Rule 59 motion) that were made after the initial grant of summary judgment to Berkeley were frivolous and Smith, an attorney, should have known to cease. Smith has timely appealed the orders granting summary judgment and the fee order.

We review de novo a district court's order granting summary judgment and view the facts in the light most favorable to the nonmoving party. Rowzie v. Allstate Ins. Co., 556 F.3d 165, 167 (4th Cir. 2009). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The purpose of the FDCPA is "to protect consumers from unfair debt collection practices." Mabe v. G.C. Svcs. Ltd. P'ship, 32 F.3d 86, 87 (4th Cir. 1994). Thus, in order for the FDCPA to apply, the regulated practices must be used to collect a "debt." Id. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services

which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5); Perk v. Worden, 475 F. Supp. 2d 565, 568 (E.D. Va. 2007). As we have noted, the case law interpreting this section of the FDCPA is "sparse." Mabe, 32 F.3d at 88.

When interpreting the definition of "debt" under the FDCPA, some courts have looked to analogous provisions of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r (2006). See Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1068 (9th Cir. 1992). When classifying a loan under the Truth in Lending Act, for example, courts typically "examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended in order to determine whether the transaction was primarily consumer or commercial in nature." Id. Courts have "looked to the substance of transactions to determine whether they fall under the ambit of consumer protection statutes [such as the FDCPA]" Perk, 475 F. Supp. 2d at 569.

Here, we do not address Smith's contentions that the district court erred in allowing EVB and Berkeley to argue estoppel and that the court erred in estopping Smith from arguing that the 2004 loan was a personal transaction. Rather, we conclude that even if the court acted properly in employing estoppel to determine that the 2004 loan was commercial in

7

nature, the court erred in concluding that the 2006 loan was similarly commercial.

In this case, the district court itself noted that the FDCPA is concerned "with the substance of the transaction as opposed to the form." The "substance" of the 2006 loan, however, was clearly personal in nature. Even assuming that the 2004 loan was commercial, Smith took the 2006 loan out in his own name with the purpose of paying off the 2004 loan. As a practical matter, the 2006 loan allowed Smith to transfer the mortgage on his home from Piedmont to himself. Indeed, Smith represented to BOG in 2006 that the loan was for personal use, and the record is uncontroverted that the loan had a entirely personal purpose — essentially taking over the debt on Smith's home.

On appeal, EVB repeatedly emphasizes that the 2004 loan was a business transaction. This argument misses the mark by ignoring the purposes of the 2006 loan. Although related to a purported business transaction, the 2006 loan concerned Smith's personal finances, his personal residence, and was taken out in his own name. In other words, it was a personal loan.

We therefore vacate the district court's judgment with respect to the underlying merits and remand. Because the fee order that is being appealed is based on the now-vacated grant of summary judgment, we vacate that order without prejudice to a

8

motion for fees at the conclusion of the district court proceedings on remand.  We dispense with oral arguments because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED