No. 14-0637 - <u>James R. Fleet, Jamila J. Fleet, and James Lampley v. Webber Springs Owners Association, Inc.,</u>

**FILED**

**April 23, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring:

Homeowners associations are typically run by a few resident volunteers who serve as officers or on boards of such associations and who act to ensure that the covenants and restrictions of the housing development are being met, including the payment of association assessments. The funds generated by those assessments are then used by the association to accomplish vital tasks that inure to the benefit of all homeowner members, such as road maintenance, as in the case at bar. While the unfair debt collection provisions of the West Virginia Consumer Credit and Protection Act ("WVCCPA") set forth a broad definition of the term "claim,"[1] the unintended and undesirable consequences that may result from the application of the WVCCPA to a homeowners association's assessments, and the association's related efforts to collect those fees, suggest that Legislative attention may be needed.

Homeowners associations, which exist for the mutual benefit of all homeowners, are typically run by homeowners who either volunteer or are elected to serve as officers of the organization. The assessments collected by those associations establish a

_____

[1]West Virginia Code § 46A-2-122 (2006).

1

fund necessary for the maintenance of the housing development's common areas. Importantly, such fees do not in any respect serve as a profit-generator. Indeed, a homeowners association's efforts to collect those fees arise out of the obligation to ensure that the maintenance of the community is accomplished in a manner that is equally borne by all those who benefit therefrom. Consequently, a construction of the unfair debt collection provisions of the WVCCPA that permits homeowners, who benefit daily from the maintenance efforts of the homeowners association, to not only selfishly refuse to pay their assessments, but then to generate a lawsuit under the WVCCPA as a result of the association's efforts to collect the delinquent assessments, is simply untenable in my view.[2]

Consider the practical effect of such an application of the WVCCPA. A dilatory homeowner refuses to pay his or her association fees, resulting in collection efforts by the association. The homeowner then initiates a claim against the association and its volunteer officers based on alleged violations of the WVCCPA. The association's officers believed they were fulfilling their obligation to all homeowners through their efforts to secure payment of the assessments by the delinquent homeowner, who was enjoying the amenities and maintenance of the development made possible by the responsible, assessment-

---

[2]I recognize that there may be situations where a homeowner refuses to pay his or her assessment as a form of protest against his or her homeowners association and/or its officers in particular for alleged misconduct, misfeasance, or similar reason. Such protest may be better expressed during the next election of the association's officers and could certainly be raised in defense to any actions by the association to collect the delinquent assessments.

2

paying homeowners. Even if unsuccessful, the delinquent homeowner will have caused the association to incur legal fees and costs in defending against the action for which it may or may not have insurance coverage. Where it does not, or where coverage is insufficient, those expenses will likely result in a special assessment.[3] Therefore, not only has the delinquent homeowner taken advantage of the assessments paid by his fellow homeowners, but he has now increased their fee burden. Surely, this was not the purpose behind the WVCCPA, which is plainly designed to target commercial, profit-generating entities.

Certain federal courts, including the Fourth Circuit, have construed the federal Fair Debt Collection Practices Act ("FDCPA") to require a debt to be a "consumer debt." *See Mabe v. G.C. Services Limited Partnership*, 32 F.3d 86, 88 (4th Cir.1994) (finding that child support obligation was not a "debt" under the FDCPA because it was not "incurred to receive consumer goods or services."); *Bloom v. I.C. Sys., Inc*., 972 F.2d 1067, 1068 (9th Cir.1992) (holding that the FDCPA applies only to "consumer debts" incurred "primarily for personal, family, or household purposes"); *Nance v. Petty, Livingston, Dawson, & Devening*, 881 F. Supp. 223, 225 (W.D. Va. 1994) (refusing to find homeowners association fee a

---

[3]Even if the delinquent homeowner's claim was brought in bad faith, the homeowners association may or may not be able to recover the attorney's fees it incurred in defending against the claim. *See* W.Va. Code § 46A-5-104 (2006) ("On a finding by the court that a claim brought under this chapter applying to . . . any prohibited debt collection practice was brought in bad faith and for the purposes of harassment, the court *may* award to the defendant reasonable attorney fees." (emphasis added.)).

"debt" under FDCPA inasmuch it was a "nonconsumer" debt). The case at bar illustrates the wisdom of this restriction since non-consumer "debts" usually implicate the acts and practices of non-commercial entities, such as homeowners associations. The deterrent purposes of the unfair debt collection provisions of the WVCCPA are not reasonably reflected in the acts of such entities.

Given the broad language of certain definitions contained within the unfair debt collection provisions of the WVCCPA, I begrudgingly concur in the majority's decision that those provisions apply to a homeowners association's attempts to collect delinquent assessments. However, I urge the Legislature to review the policy considerations behind the applicability of the WVCCPA to such assessments and other similar non-consumer debts.[4]

---

[4]I also concur in the majority's ruling that consensual common law liens against real property are authorized under West Virginia Code §§ 38-16-201 and -202(a).